UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA, FOR THE USE AND BENEFIT OF THE NEW IEM, LLC, et al.,<br><br>　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>TRI-TECHNIC, INC., et al.,<br><br>　　　　　　　　Defendants. | Case No.  20-cv-01505-VC<br><br>**ORDER GRANTING MOTION TO COMPEL**<br><br>Re: Dkt. No. 9 |

　　　　This action arises from a dispute between IEM, Tri-Technic, and Argonaut Insurance over payment due under a subcontract for a project authorized by the Department of Energy. IEM agreed to provide, among other things, switchgears and circuit breaker control panels to upgrade the SLAC National Accelerator Laboratory in Menlo Park, California. In its complaint, IEM (the subcontractor) sues Tri-Technic (the prime contractor) on theories of contract breach and quantum meruit. IEM also seeks to recover under the Miller Act on a payment bond delivered to the United States by Tri-Technic as principal and by Argonaut Insurance as surety. Because IEM cannot enforce a mechanic's lien on the United States' property, the bond secures IEM's entitlement to be "paid in full within 90 days" of furnishing the last good or service. 40 U.S.C. § 3133(b)(1); *see F. D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 121–22 (1974).

　　　　Tri-Technic and Argonaut Insurance move to compel arbitration of all three claims based on IEM's quotation, which provides that "[a]ny claim arising out of or related in any way to the purchase of goods or services by purchaser . . . shall be submitted to binding arbitration" to be

"conducted in accordance with the rules of the American Arbitration Association." Dkt. No. 1-1 at 9. This broadly worded provision clearly encompasses the claims in this case. *See Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 922 (9th Cir. 2011). Indeed, prior to filing this lawsuit, IEM had filed a demand for arbitration of its express and implied contract claims, but it insisted in correspondence with Tri-Technic that the Miller Act claim is not arbitrable.

Although the Supreme Court has not ruled authoritatively on the arbitrability of Miller Act claims, *see Moseley v. Electronic & Missile Facilities*, 374 U.S. 167, 171 (1963), federal circuit courts have held that the rights created by the Miller Act, like those created by most federal statutes, may be submitted to arbitration under the Federal Arbitration Act (FAA), *see, e.g.*, *United States for Use and Benefit of Capolino Sons, Inc. v. Electronic & Missile Facilities, Inc.*, 364 F.2d 705, 706–07 (2d Cir. 1966). *See also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). But that's not the end of the matter, because Congress has since amended the Miller Act to prohibit prospective waivers of the subcontractor's right to recover on the payment bond. Specifically, after the Construction Industry Payment Protection Act of 1999, the Miller Act now contains the following proviso: "A waiver of the right to bring a civil action on a payment bond required under this subchapter is void unless the waiver is (1) in writing; (2) signed by the person whose right is waived; and (3) executed after the person whose right is waived has furnished labor or material for use in the performance of the contract." 40 U.S.C. § 3133(c).

The question whether an arbitration agreement is a "waiver of the right to bring a civil action" is a difficult one, not least because the Supreme Court has repeatedly cautioned that only a "contrary congressional command" can override the FAA. *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012); *see Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1628 (2018). Thus far, the Court has located such a command only when a statute explicitly mentions arbitration, but no one thinks that Congress must incant magic words to rebut the presumption that the FAA applies. *See CompuCredit*, 565 U.S. at 103–04; *id.* at 109 (Sotomayor, J., concurring in judgment).

Tri-Technic and Argonaut Insurance contend that § 3133(c) can be interpreted

consistently with (and therefore does not override) the FAA. Relying on a recent district court decision, they argue that IEM's ability to file a Miller Act claim in court, even if the court immediately compels the claim to arbitration, qualifies as an exercise of the right to bring a civil action. *See United States v. International Fidelity Ins. Co.*, 232 F. Supp. 3d 1193, 1197 (S.D. Ala. 2017). So long as IEM may pursue its statutory remedies in some adequate forum, the argument goes, IEM can effectively vindicate its federal right to prompt payment in full. *See American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 235–36 (2013). But the Miller Act doesn't merely preserve the right to pursue civil liability. The right to bring a "civil action" most naturally refers to a "judicial proceeding" to enforce one's substantive rights under the Miller Act—not just a judicial proceeding to enforce arbitral rights related to the Miller Act. "Action," *Black's Law Dictionary* (11th ed. 2019). Said otherwise, the Miller Act appears to create a "right to initial judicial enforcement," which the Court has suggested would satisfy its demanding test to displace the FAA. *CompuCredit*, 565 U.S. at 101.

Whichever way one comes out on this difficult question, the answer no longer matters for this case. The defendants' interpretation of the Miller Act is certainly debatable, yet IEM punted despite being in position to put points on the board. Neither did IEM contest that Argonaut Insurance, a non-party to the arbitration agreement, can join the motion to compel. Conceding these non-jurisdictional issues, IEM's opposition brief instead argued only that arbitration cannot be compelled absent a judicial determination whether the additional terms in Tri-Technic's purchase order became part of their agreement.

IEM's request for an exhaustive excavation of the subcontract's terms finds no support in the FAA, which requires only judicial confirmation of "the making of the agreement for arbitration." 9 U.S.C. § 4; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967). Sometimes when forms conflict, the parties will not have formed any agreement to arbitrate under, for example, the Uniform Commercial Code's gap-filling rules of offer and acceptance. *See Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 787–88 (9th Cir. 2001). Yet the "making" of an arbitration agreement seems plain enough when both sides have invoked

the agreement, albeit for different claims. In any event, having affirmatively sought arbitration, IEM waived its ability to deny the existence of an arbitration agreement once it perceived a tactical advantage. *Cf. Newirth by and through Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935, 940 (9th Cir. 2019).

The arbitrator will decide in the first instance the scope of the parties' obligations, including whether the quotation, purchase order, or pertinent default rules supply the terms governing this dispute. The case is stayed pending arbitration. 9 U.S.C. § 3. The initial case management conference scheduled for July 1, 2020, is vacated. The parties must file a joint status report on January 6, 2021, and every six months thereafter until the stay is lifted.

**IT IS SO ORDERED.**

Dated: June 27, 2020

_____
VINCE CHHABRIA
United States District Judge